**Opinion issued December 18, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00845-CV

_____

**DANIEL BO RITZ, Appellant**

**V.**

**NORMAN T. REYNOLDS LAW FIRM, Appellee**

---

**On Appeal from the 133rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-09186**

---

## MEMORANDUM OPINION

This appeal arises out of efforts by Appellee Norman T. Reynolds Law Firm ("Reynolds Firm") to collect its legal fees for work performed for VR Holdings, Inc. ("VRH"). The case was sent to mediation, where Appellant Daniel "Bo" Ritz, an investment banker who had invested his clients' funds in VRH, appeared as

VRH's corporate representative. The mediation resulted in a settlement agreement under which the Reynolds Firm would be given stock of a company in satisfaction of the amounts owed to it by VRH.

The Reynolds Firm never received the shares. Accordingly, it amended its petition to add Ritz as a defendant, making various claims against him based on the failed settlement agreement. When the case went to trial, VRH did not appear, but Ritz did. The trial court entered what appears to be a default judgment against VRH for the full amount of fees it allegedly owed to the Reynolds Firm, and it also entered judgment against Ritz "in tandem and jointly" for the full amount owed by VRH, plus fees, costs, and interest. Ritz appeals, and we affirm.

## Background

The Reynolds Firm and its principal attorney, Norman T. Reynolds, represented VRH in corporate and securities matters. Between approximately 2009 and 2014, the Reynolds Firm did substantial work for VRH in connection with taking it public, including completing a merger with another company and then unwinding the merger when it proved unsuccessful. Ritz was involved in some of these transactions, helping to facilitate the merger between VRH and the other company.

The Reynolds Firm billed VRH for this work, some of which VRH paid but most of which it did not, leaving a balance due of approximately $260,000.

2

Although the precise amount due was disputed at trial, the Reynolds Firm's operative petition alleged the amount due was $259,020, and Reynolds testified at trial that around $269,000 was "a balance after payments have been made."

When VRH failed to pay, the Reynolds Firm brought this suit against it to collect the amounts owed, making claims for breach of contract, suit on sworn account, and quantum meruit. VRH filed a verified answer denying it owed the amounts claimed. When it first filed the suit, the Reynolds Firm did not name Ritz as a defendant.

The parties went to mediation. Reynolds attended as the representative for the Reynolds Firm, which was also represented by counsel. VRH was represented at the mediation by its counsel, and Ritz attended as VRH's corporate representative. Ritz was not a party to the case at the time of the mediation, nor was he an employee or officer of VRH. He nevertheless attended the mediation as VRH's corporate representative at the request of VRH's counsel and to try and salvage his investments in it. According to Ritz, "[w]e had investment . . . in [VRH]" in which "[m]y constituents had put up, I think, a hundred thousand dollars to try and revitalize [VRH] and that was largely in jeopardy." A judgment against VRH "would have prohibited any availability for us to try to complete any kind of a transaction with the load on the balance sheet of the company being over a quarter of a million dollars," and "there was basically no one representing the

3

company . . . [s]o I tried to have some representation for the company to reach some reasonable outcome." "The intent was to try to reach some sort of an outcome which would allow capital to then be raised."

The mediation resulted in a settlement agreement under which 300,000 shares of a company called Umed Holdings, Inc. ("Umed") would be transferred to the Reynolds Firm, apparently in satisfaction of the debt owed by VRH. The parties recorded their agreement in a handwritten document entitled "Settlement Agreement," the first provision of which states, "Plaintiff agrees to pass hearing on summary judgment and postpone trial date, provided defendant complies with following agreements: A) delivers to Plaintiff a stock certificate registered in plaintiff's name for 300,000 shares of common stock of Umed Holdings, Inc. (UMED Symbol), which certificate shall be free of any and all restrictions and legends." Counsel for both parties signed the settlement agreement. In addition, Reynolds signed the agreement as "Plaintiff," and Ritz signed the agreement as "VRHD Rep."

The details of the share transfer were disputed at trial. Reynolds testified that Ritz represented during the mediation that he owned or controlled the 300,000 Umed shares and would personally transfer them to Reynolds. Reynolds also testified he later verified Ritz's ownership of the shares. But according to Ritz, he neither owned 300,000 Umed shares nor guaranteed their transfer to Reynolds, and

4

he was not personally involved in the share transfer. Instead, "an affiliate" who "was a friend of mine . . . had agreed under -- a settlement with VR Holdings to contribute those shares because it was a noncash item so that VR Holdings could then settle the case with Mr. Reynolds . . . which would have gone to the spirit of what we were trying to accomplish which is recapping a shell company."

It is undisputed that no Umed shares were ever transferred to the Reynolds Firm. When the share transfer failed to materialize, the Reynolds Firm amended its pleadings to add Ritz as a defendant in his individual capacity. In its operative petition, the Reynolds Firm alleged that both VRH and Ritz were "indebted to Plaintiff in the amount of $259,020.00." It made claims against both defendants for breach of contract, suit on sworn account, tortious interference, and quantum meruit. And alleging that Ritz "represented that the case was settled via use of shares that he had access to at the time of the mediation of this matter," the Reynolds Firm also claimed "Ritz defrauded Plaintiff, both statutorily and via common law, breached a contract that he personally guaranteed, and defrauded the Plaintiff."

The case was tried to the bench in April 2022. VRH did not appear at trial. Ritz appeared, was represented by counsel, and testified. At the conclusion of the Reynolds Firm's case-in-chief, Ritz moved for a directed verdict, arguing that the Reynolds Firm failed to produce evidence on all elements of its breach-of-contract

5

claim and "any other liability theory that they have in this case." The trial court denied the motion. Ritz did not re-urge his directed verdict motion at the close of the evidence.

In May 2022, prior to the entry of judgment, Ritz proposed findings of fact and conclusions of law. The trial court did not take any action on Ritz's proposed findings and conclusions. The record does not reflect that Ritz ever filed a notice of past due findings and conclusions. *See* TEX. R. CIV. P. 297.

On August 10, 2023, the trial court signed a final judgment. The operative portions of the judgment state in full:

> On Plaintiff Norman T. Reynolds Law Firm's claims against Defendant VR Holdings, Inc., the Court enters judgment against Defendant and in favor of Norman T. Reynolds Law Firm.
>
> As provided in Rule 241, Texas Rules of Civil Procedure,[1] the Court renders a judgment against Defendant "Bo" L. Ritz and in tandem and jointly, VR Holdings, Inc., for liquidated damages in the amount of $259,020.00, plus costs, attorney's fees totaling $43,250.00, and prejudgment interest.
>
> All costs to court to be taxed against Daniel "Bo" L. Ritz and VR Holdings Inc. All relief not granted herein is denied. This is the final judgment of this court, and from which let execution rise.

---

[1] Rule 241 states, "When a judgment by default is rendered against the defendant, or all of several defendants, if the claim is liquidated and proved by an instrument in writing, the damages shall be assessed by the court, or under its direction, and final judgment shall be rendered therefor, unless the defendant shall demand and be entitled to a trial by jury." TEX. R. CIV. P. 241.

6

On August 14, 2023, four days after the trial court signed the judgment, Ritz again filed proposed findings of fact and conclusions of law. The Reynolds Firm filed proposed findings and conclusions the same day, which it amended a few weeks later. The trial court did not adopt either party's proposed findings and conclusions, and the record does not reflect that either party filed a notice of past due findings and conclusions. *See id.*

Ritz moved for reconsideration and a new trial, which the trial court denied after a hearing. Ritz timely appealed. VRH does not appeal.

**Analysis**

Ritz raises six issues on appeal. First, he contends the trial court erred by failing to enter findings of fact and conclusions of law. Second, he argues the trial court erred by entering a default judgment against him when he appeared and testified at trial. Third, he argues the trial court abused its discretion by awarding the Reynolds Firm its fees. Fourth, Ritz contends there was legally and factually insufficient evidence to support the damages award against him. Fifth, Ritz argues the evidence was legally insufficient to support a judgment against him for breach of contract or fraud. And finally, Ritz argues the trial court erred by denying his motion for directed verdict on the Reynolds Firm's breach of contract and fraud claims.

**A.      The trial court's failure to enter findings of fact and conclusions of law**

Ritz has waived his first issue, in which he contends the trial court reversibly erred by failing to enter findings of fact and conclusions of law.  Ritz contends he timely filed proposed findings and conclusions, thus triggering the trial court's obligation to make findings and conclusions within twenty days.  *See* TEX. R. CIV. P. 296–297.  But if the trial court fails to meet that obligation, "the party making the request must, within thirty days after filing the original request, file with the clerk and serve on all other parties . . . a 'Notice of Past Due Findings of Fact and Conclusions of Law[.]'"  TEX. R. CIV. P. 297.

The record does not reflect that Ritz ever filed a notice of past due findings and conclusions.  As a result, his appellate argument on this point is waived.  *APMD Holdings, Inc. v. Praesidium Med. Prof'l Liability Ins. Co.*, 555 S.W.3d 697, 706 n.5 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (holding that, despite a request from the parties, "[t]he trial court did not file findings of fact and conclusions of law. APMD did not, however, file a notice of past due findings of fact and conclusions of law. . . . APMD's failure to file a notice of past due findings and conclusions waives any appellate complaint concerning the trial court's failure to file such findings and conclusions." (citation omitted)); *Guillory v. Boykins*, 442 S.W.3d 682, 694 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Because the record does not reveal that Guillory timely filed a reminder of past-

8

due findings of fact and conclusions of law as required by Rule 297, this appellate complaint is waived." (citing *Las Vegas Pecan & Cattle Co. v. Zavala Cnty.*, 682 S.W.2d 254, 255–56 (Tex. 1984)).

We overrule Ritz's first issue.

## B.     The trial court's entry of default judgment against Ritz

In his second issue, Ritz contends the trial court erred by entering a default judgment against him when he appeared at trial, testified, and cross-examined adverse witnesses. He further argues that no claim was pled or tried by consent that would allow the court to hold him derivatively liable for VRH's default judgment.

The trial court's judgment does not state expressly that it is a "default judgment" against Ritz. The judgment states that it is entered against Ritz for liquidated damages "[a]s provided in Rule 241, Texas Rules of Civil Procedure." Rule 241 deals with an assessment of liquidated damages "[w]hen a judgment by default is rendered against the defendant, or all of several defendants." TEX. R. CIV. P. 241.

In his motion for reconsideration and new trial, Ritz did not argue that the trial court erred by awarding liquidated damages against him under Rule 241 or otherwise argue a default judgment should not have been rendered against him. Accordingly, we conclude this issue is waived. *See* TEX. R. APP. P. 33.1(a); *Shields*

*v. Com. State Bank*, No. 01-16-00643-CV, 2018 WL 3352980, at \*3 (Tex. App.—Houston [1st Dist.] July 10, 2018, no pet.) (mem. op.) (appellants waived appellate complaint that default judgment was improperly entered against them because they did not "raise in the trial court any of the arguments they now present in their brief to support setting aside the default judgment"); *see also Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 604 (Tex. 2012) ("When a party fails to preserve error in the trial court or waives an argument on appeal, an appellate court may not consider the unpreserved or waived issue.").

We overrule Ritz's second issue.

## C.     The trial court's award of attorney's fees against Ritz

In his third issue, Ritz argues the trial court abused its discretion in awarding attorney's fees against him because it is not known under which authority the fees were awarded.  Ritz contends the fees awarded pursuant to Reynold's breach of contract claim were not authorized because Reynolds did not first present this claim and afford Ritz thirty days to pay it.  *See* TEX. CIV. PRAC. & REM. CODE § 38.002.

Ritz did not raise this challenge in the trial court.  Accordingly, we conclude this issue is waived.  *See* Tex. R. App. P. 33.1(a); *see also Coleman v. Coleman*, No. 01-09-00615-CV, 2010 WL 5187612, at \*2 (Tex. App.—Houston [1st Dist.]

Dec. 23, 2010, no pet.) (mem. op.) ("Presentment must be raised at the trial court to be preserved on appeal.").

We overrule Ritz's third issue.[2]

## D. The trial court's damages award

In his fourth issue, Ritz argues the evidence is legally and factually insufficient to support the damages award of $259,020.

### 1. Standards of review

"When, as here, findings of fact and conclusions of law were neither issued nor properly and timely requested after a nonjury trial, we presume the trial court made all of the factual findings necessary to support the judgment." *Castillo v. Luna*, 640 S.W.3d 256, 260 (Tex. App.—Houston [14th Dist.] 2021, pet. denied) (citing *Shields Ltd. P'Ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017)). We thus presume the trial court found the Reynolds Firm was damaged in the amount of $259,020. *See id.* But Ritz can "rebut the presumption by demonstrating that the record evidence does not support the presumed finding." *Id.* (citing *Ad Villari, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017)). In his fourth issue, Ritz attempts to do so through legal and factual sufficiency challenges to the trial court's presumed damages finding.

---

[2] Because below we overrule Ritz's sufficiency-of-the-evidence challenge to the breach-of-contact claim asserted against him, we need not consider the part of his third issue arguing the trial court erred to the extent it awarded attorney's fees on the fraud claim against him.

When a party challenges the legal sufficiency of the evidence to support an adverse finding on which it did not have the burden of proof, that party must demonstrate that no evidence supports the finding. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014). In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the trial court's decision and indulge every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Epps v. Deboise*, 537 S.W.3d 238, 242–43 (Tex. App.—Houston [1st Dist.] 2017, no pet.). We also consider favorable evidence that a reasonable factfinder could consider and disregard contrary evidence unless a reasonable factfinder could not. *Stamper v. Knox*, 254 S.W.3d 537, 542 (Tex. App.— Houston [1st Dist.] 2008, no pet.). "Anything more than a scintilla of evidence is legally sufficient to support the [challenged] finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).

To determine factual sufficiency, a reviewing court considers all the evidence that either supports or contradicts the factfinder's determination. *Epps*, 537 S.W.3d at 243. The factfinder's finding is set aside only if "the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex.

2016).  In a factual sufficiency review, "[t]he amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment."  *Harris Cnty. v. Coats*, 607 S.W.3d 359, 381 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

Under both standards, the factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony.  *N.E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 255 n.50 (Tex. 2020).

### 2.     The trial court's damages award is supported by legally and factually sufficient evidence

At trial, the Reynolds Firm introduced certain of its invoices to VRH for the legal services it provided.  Ritz argues Reynolds' testimony establishes that this evidence did not include all of the Reynolds Firm's invoices showing the amounts charged or payments made, that Reynolds was not sure exactly how much the Reynolds Firm charged in total, and that Reynolds did not know how much VRH had paid toward the Reynolds Firm's bills.  According to Ritz, these gaps in the Reynolds Firm's documentary evidence prevented the trial court from finding that $259,020 was owed.

However, Reynolds also testified without objection that "[i]n the complete billing records," the Reynolds Firm was owed around $269,000 "after payments have been made."  Considering this evidence in the light most favorable to the judgment and indulging every reasonable inference to support it, we conclude this testimony is legally sufficient to support the trial court's $259,020 damages award,

13

and it is "more than a scintilla" of evidence in support of the award. *Formosa Plastics*, 960 S.W.2d at 48; s*ee also City of Keller*, 168 S.W.3d at 822; *Stamper*, 254 S.W.3d at 542.

Likewise, after considering all the evidence, we also conclude this testimony is factually sufficient evidence to support the trial court's finding of $259,020 in damages because it is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Shafaii Invs., Ltd. v. Rivera*, No. 01-21-00731-CV, 2025 WL 2485682, at *5 (Tex. App.—Houston [1st Dist.] Aug. 29, 2025, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

We overrule Ritz's fourth issue.

## E. Sufficiency of the evidence regarding breach of contract and fraud

In his fifth issue, Ritz argues the evidence is legally and factually insufficient to support a judgment against him for breach of contract and fraud.

Regarding breach of contract, Ritz argues that, because he signed the mediated settlement agreement as a representative of VRH, and not in his individual capacity, he cannot be individually liable for breach of the agreement. In support of this argument, Ritz points to the Reynolds Firm's lawyer's testimony that, "in large part," the breach of contract claim against Ritz was based on the mediated settlement agreement. However, "in large part" does not mean "in total," and Reynolds testified that Ritz had personally offered 300,000 shares he owned in

14

Umed to settle the claim against VRH, and that the Reynolds Firm accepted the offer by Reynolds stating, "Okay, I'll take it." Thus, we conclude the evidence is legally and factually sufficient to support the trial court's implied finding that Ritz agreed to pay the Reynolds Firm 300,000 shares of Umed stock to settle the claims against VRH.

Because we reject Ritz's sufficiency challenge as to the breach-of-contract claim, we need not consider whether there is evidence to support the fraud claim. We overrule Ritz's fifth issue.[3]

## Conclusion

We affirm the trial court's judgment.

Andrew Johnson
Justice

Panel consists of Justices Guerra, Guiney, and Johnson.

---

[3] For the same reason, we overrule Ritz's sixth issue in which he argues the trial court should have granted his motion for directed verdict against the Reynolds Firm's breach-of-contract claims.